IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN ANTONIO NET-BRUNET, MARTA COSTAS-LATONI, and CONJUGAL PARTNERSHIP NET-COSTAS<br><br>**Plaintiffs**,<br><br>v.<br><br>PRIVATE EQUITY SOLUTIONS, LLC,<br><br>**Defendant.** | CIV. NO. 24-1368 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Private Equity Solutions, LLC's ("Defendant" or "PES") *Motion to Disqualify Counsel for Plaintiffs* ("*Motion to Disqualify*"). (Docket No. 7). For the following reasons, the Court **DENIES** Defendant's *Motion to Disqualify*.

I.   BACKGROUND

On August 16, 2024, Plaintiff Juan Antonio Net-Brunet ("Plaintiff" or "Mr. Net")[1] filed a *Complaint* against Defendant for breach of contract, fraud in the inducement, and unjust enrichment. (Docket No. 1). In essence, Plaintiff claims that PES materially breached its obligation to pay him, a third-party beneficiary, for dividends on preferred shares he owned in BEEWEE

---

[1] Net is joined in the *Complaint* by Marta Costas Latoni and their conjugal partnership. (Docket No. 1 ¶ 1). For ease of reference, the Court uses the term Plaintiff to refer to Net specifically and to refer to his position, which is shared with his co-plaintiffs.

Solutions Corp. ("BEEWEE"), pursuant to agreements from 2010 and 2015. Id. As a preliminary note, Plaintiff refers to Ferdinand Ruaño as the principal of PES and includes him in factual allegations common to all claims. Id. ¶ 19; *see* id. ¶¶ 6-42.

According to the *Complaint*, in July 2010, PES entered into a "warehousing" purchase agreement for certain assets of BEEWEE, providing that PES would retain the residual resulting from the transaction as a reserve to pay preferred shareholders and creditors. Id. ¶¶ 20-21. In February 2015, Mr. Net and PES entered into an agreement to transfer corporate shares – wherein Mr. Net agreed to sell PES his common shares while retaining his preferred shares. Id. ¶¶ 22-24. Plaintiff alleges that while PES continued to pay interest payments to other preferred shareholders of BEEWEEE as an acquired obligation under the agreements, PES has repeatedly delayed and failed to make payments to Mr. Net. Id. ¶¶ 27-37.

Therefore, Plaintiff asserts that PES is liable for materially breaching its obligation to pay Net for his preferred shares of BEEWEE as agreed. Id. ¶¶ 43-46. Furthermore, Plaintiff alleges PES induced him into entering and executing the purchase sale of certain assets of BEEWEE by making material representations and false assurances that PES would honor the terms of its agreement with preferred shareholders – including payment for shares and payment of dividends on those shares. Id. ¶¶ 47-57.

Lastly, Plaintiff claims Defendant was unjustly enriched since PES continues to retain a conferred monetary benefit without properly compensating Mr. Net. Id. ¶¶ 58-65.

Subsequently, on October 21, 2024, Defendant filed the pending *Motion to Disqualify*. (Docket No. 7). Defendant moves to disqualify Plaintiff's attorney, Jane Becker Whitaker ("Becker"), on the grounds that there is a "clear conflict of interest that jeopardizes the fairness and impartiality of these proceedings" if Becker is permitted to continue as an attorney in this case. Id. ¶ 1. Defendant asserts that Becker was a member of a law firm ("BGM") that represented Mr. Net, PES, and Ruaño at the times when Mr. Net and PES entered into the two contracts from which the *Complaint* arises in 2010 and 2015. Id. ¶¶ 4 and 27. Additionally, Defendant contends Becker authorized an affidavit that involved PES while acting as a notary public. Id. As such, Defendant claims that Becker obtained access to intimate confidential information whilst in those positions, which is now being used to the benefit of Plaintiff to prejudice Defendant. Id. ¶¶ 5 and 28-29.

Plaintiff filed an *Opposition to Motion to Disqualify* ("*Opposition*"), asserting that Becker never had an attorney-client relationship with PES and that her work as a notary public involved no assumption of responsibility for the content of any documents before her. (Docket No. 15). Moreover, Plaintiff asserts that PES

fails to allege a single confidence exchanged in its *Motion to Disqualify*, much less any materially relevant information used by Becker. Id. at 3-4. Furthermore, Plaintiff maintains there was no scope to Becker's former representation to even compare to the present case because there was no former representation period. Id.

## II. APPLICABLE LAW

Rule 1.9(a) of the American Bar Association Model Rules of Professional Conduct ("Model Rules") provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MODEL RULES OF PROF'L CONDUCT R. 1.9(a) (2024). "The purpose of this disqualification rule is to prevent confidential information, from a prior representation, from being used for the benefit of another client who is now the adversary of the prior client." Reyes Canada v. Rey Hernandez, 193 F. Supp. 2d 409, 411 (D.P.R. 2002). Model Rule 1.7(a) also prohibits legal representation if it "involves a concurrent conflict of interest[,]" *i.e.,* if "the representation of one client will be directly adverse to another client." MODEL RULES OF PROF'L CONDUCT R. 1.7(a)(1) (2024).

The First Circuit has held that when a party seeks disqualification of an attorney due to a conflict of interest, "the relevant inquiry is whether the subject matter of the two representations is 'substantially related'; could the attorney have obtained confidential information in the first suit that would have been relevant to the second." Borges v. Our Lady of the Sea Corp., 935 F.2d 436, 439-40 (1st Cir. 1991) (quoting Analytica, Inc. v. NPD Rsch., Inc., 708 F.2d 1263, 1266 (7th Cir.1983)). *See also* Estrada v. Cabrera, 632 F. Supp. 1174, 1175 (D.P.R. 1986) (quoting La Salle Nat'l Bank v. Cnty. of Lake, 703 F.2d 252, 255 (7th Cir. 1983)) ("The basic question which the district court faces in considering a motion praying for disqualification is 'whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation'"). Under the substantially related test:

> [T]he first step is to factually reconstruct the scope of the prior representation. Second, the Court must determine whether it is reasonable to infer that the information allegedly given, would have been provided to an attorney involved in the representation of those matters. Lastly, the court must determine whether that information is relevant to the issues raised in the litigation pending against the former client.

Reyes Canada, 193 F. Supp. 2d at 411-12 (citations omitted).

Civil No. 24-1368 (RAM)                                                    6

The moving party bears the burden of establishing the facts required for disqualification. Estrada, 632 F. Supp. at 1175 (citing Evans v. Artek Sys. Corp, 715 F.2d 788, 794 (2d Cir. 1983). "For this purpose, naked claims that the attorney received confidential information from his prior (and now adverse) client do not suffice." Velazquez-Velez v. Molina-Rodriguez, 235 F. Supp. 3d 358, 361–62 (D.P.R. 2017). *See also* Estrada, 632 F. Supp. at 1175 ("To disqualify a party's chosen attorney is a serious matter which could not be supported by the mere possibility of a conflict"). Instead, "**the moving party must allege the type and nature of the confidences that were exchanged in the prior litigation that should subsequently disqualify the attorney in the latter representation**." Starlight Sugar Inc. v. Soto, 903 F. Supp. 261, 265 (D.P.R. 1995) (emphasis added). Thus, simply asserting "that confidential information was exchanged in a prior representation will not suffice to create the 'irrebuttable presumption' of shared confidences that is so frequently spoken of in this area of the law." Id.; *see also* Reyes Canada, 193 F. Supp. 2d at 411 (noting that motions to disqualify should be approached with cautious scrutiny because they are often used for strategic purposes).

## III. DISCUSSION

In the *Motion to Disqualify*, Defendant identifies two instances involving Becker that allegedly constitute conflicts of interest: (1) Becker was a legal advisor for the firm that represented Plaintiff, while they represented Ruaño and PES to execute the incorporation of PES in Puerto Rico and "in the advice of its business activities"; and (2) Becker served as a notary public "to authorize a corporate resolution in response to agreements" executed between Mr. Net, PES, and Ruaño. (Docket No. 7 ¶ 27). Accordingly, Defendant states that "it must be assumed that, acting in that capacity, attorney Becker obtained access to intimate and confidential information that she can utilize to advance the interests of plaintiffs." Id. at 28. Furthermore, Defendant maintains that the subject matter of "Becker's former and current representation is substantially related, if not considered the same." Id.

### A. Scope of BGM-relations

Defendant fails to provide sufficient information to fully reconstruct the scope of the alleged previous legal representation and the extent to which, if any, Becker was involved in the incorporation of PES and initial agreements in purchasing BEEWEE.

According to the *Motion to Disqualify*, in June 2010, Ruaño retained BGM as counsel to incorporate PES in Puerto Rico. (Docket

Civil No. 24-1368 (RAM)                                                    8

No. 7 ¶ 12). In a letter BGM sent in October 2012 to Ruaño and PES to memorialize the organization, Becker was listed as a BGM advisor on the letterhead. Id. ¶ 13. In May 2013, BGM sent a letter to Ruaño regarding a transaction involving Puerto Rico's Property Registry, wherein Becker was again listed as a BGM advisor on the letterhead. Id. ¶ 14. Defendant avers that this is enough to create a conflict of interest, yet Defendant fails to identify any specific confidential information that counsel allegedly obtained from them. It is uncontested that the firm's letterhead has Becker listed under the heading labeled "Advisors," but no explanation is given as to what this title entails.

 By contrast, Becker avers that she has no duty of loyalty to PES because she never met with anyone from PES to discuss legal matters, never appeared in a case on its behalf, "nor did she negotiate any matter for the company or attend any meeting where company matters were discussed." Id. at 1-2. To the extent she appears on the firm's letterhead, Becker explains it was due to her occasional work as a co-counsel while she rented office space from the firm. Id. at 2-3. To further hit home this argument, Plaintiff points to Defendant not recognizing Becker prior to "discovering" her "involvement" upon receiving files from BGM in preparation for the present litigation. Id. at 4

Defendant's allegations as to the "nature and type of confidences that were exchanged" remain too broad to satisfy their burden. Starlight Sugar Inc., 903 F. Supp. at 265. Defendants fail to show how Becker's role as an "advisor" equates to being a member of the BGM firm with access to work which may have involved PES matters. Additionally, Defendant's own admission that it first discovered Becker's connection to BGM upon receiving discovery materials in 2024 further supports Becker's proffer that she never previously handled any matters in connection with Ruaño or PES. (See Docket No. 7 ¶¶ 16-17). Defendant's allegations that Becker, in her role as a BGM advisor, obtained confidential information that could be used to PES's detriment in the case at bar are naked assertions that lack specifics.

B. **Scope of Notary-relations**

According to Defendant, on June 3, 2016, Becker, whilst acting as a notary, authenticated the signatures of Mr. Net and another BEEWEE officer "in a corporate resolution where, among other things, reference was made to the agreement of February 25, 2015, whereby PES PR, acquired the totality of NET's common stock owned by Net in Beewee." (Docket No. 7 ¶ 15). Defendant points to Canon 38 of the Puerto Rico Code of Ethics to assert that attorneys must avoid "the mere appearance of unethical or improper professional conduct." Id. ¶ 24. Furthermore, Defendant argues that Rule 5 of

Civil No. 24-1368 (RAM)                                                10

the Notarial Regulations of Puerto Rico requires that "a notary who authorizes a document is prohibited from subsequently acting as an attorney for one of the authorizing parties to enforce, in contentious litigation, the obligations undertaken by any other authorizing party in the document executed before them." Id. at 5.

In *Opposition*, Plaintiff highlights that Rule 5 of the Notarial Regulation also provides in relevant part that "a notary can act as an attorney in the same matter when the notary only legitimated the authenticity of signatures, and in the litigation neither the signatures nor the document where those signatures appear is the principal object of the claim." (Docket No. 15 at 5). Plaintiff maintains that this is the present case. Id. Plaintiff asserts that notarizing the document in question solely entailed assuring that the person identified in the document was said individual appearing on the date and place indicated. Id. at 2. Thus, Becker did not give faith as to the transaction set forth or assume responsibility for the content of the document. Id. And since the present case does not regard an issue as to the validity of the signatures, the document is peripheral to Plaintiff's claim against PES – meaning Becker's work as a notary public does not preclude her from serving as legal representation in this case. Id.

While a "[n]otary is prevented from representing as an advocate a client in contentious litigation," paragraph 5 of Puerto Rico Notarial Regulations, Rule 5 states:

> [t]he Notary shall also be able to act as an advocate on the same matter when before the litigation the Notary merely certified the authenticity of signatures, and in the litigation neither the signatures nor the document in which they appear are the principal object of the complaint.

Rivera v. Periodicos Todo Bayamon, No. CIV. 93-2123 (DRD), 1997 WL 43202 at *5-6 (D.P.R. Jan. 23, 1997). The comments to Rule 5 further elaborate the distinction, noting that "an attorney may not notarize answers to interrogatories and then act as an advocate in the same cases because the attorney usually is substantially responsible for the specific language used in drafting the document in question, and because the attorney's signature is normally the only one on such documents." Id. at *6. In such instances the notarization is comparable to a claim of veracity. Id. "In contrast, an attorney-notary may take sworn testimony at a deposition and otherwise authenticate signatures because in such situations the attorney is merely certifying that the declarant made the declarations in question." Id.

The document at issue here is comparable to the latter situation, where Becker was merely present to authenticate signatures and certify identities. She did not make any claim as

to the veracity of the corporate resolution's contents, nor is the authenticity of the signatures on said document the subject of the present litigation. Furthermore, Defendant has failed to show how Becker's role in the notarization of the affidavit equates to receiving confidential, adverse information.

The scope of the three-page document that Becker notarized is limited to a general overview of major events in BEEWEE's corporate timeline, since BEEWEE was originally registered in 2003 through to the signing of the certificate of corporate resolution on June 3, 2016. (Docket Nos. 7-7 and 11-4). The only reference to any of the agreements Defendant states are relevant to the *Complaint* is that "[o]n February 25, 2015, PRIVATE EQUITY SOLUTIONS, a limited liability corporation (LLC) organized and existing under the laws of Puerto Rico, acquired the totality of the common shares in circulation belonging to Juan A. Net Brunnet." Id. The present case before the Court pertains to a dispute over the preferred shares in BEEWEE owned by Mr. Net, unrelated to any of the resolutions and content within the notarized affidavit.

Accordingly, Defendant failed to show more than the mere possibility of a conflict of interest.[2]

---

[2] However, the Court notes that it is not analyzing the facts at hand under the Puerto Rico Canons of Professional Ethics, which impose different, more stringent, requirements than the Model Rules.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's *Motion to Disqualify Counsel for Plaintiffs* at Docket No. 7.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of November 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE